IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT MACIAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-CV-904-MAB |
| | ) |
| LATOYA HUGHES, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court is a motion for summary judgment filed by Defendants Latoya Hughes[1], in her official capacity for injunctive relief only, Terrance Jackson, Nathan McCarthy, and Joshua Schoenbeck (Docs. 51, 52). For the reasons set forth below, Defendants' motion for summary judgment is GRANTED (Doc. 51).

### PROCEDURAL AND FACTUAL BACKGROUND

On May 3, 2022, Plaintiff Robert Macias filed this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Menard Correctional Center (*see* Doc. 1). Plaintiff's Complaint alleges that Defendants violated his due process rights by failing to properly investigate a disciplinary report and conduct disciplinary proceedings, which led to Plaintiff being placed in segregation for six months, wherein he alleges he faced an atypical and significant hardship (*Id.*).

---

[1] Pursuant to Federal Rule of Civil Procedure 25, Defendant Latoya Hughes was automatically substituted for Defendant Rob Jeffreys because Defendant Hughes is the successor of Defendant Jeffreys, who was sued in his official capacity (*see* Doc. 10 at p. 5).

Specifically, Plaintiff alleged that on September 16, 2021, he was removed from Menard's general population and placed in restrictive housing on investigative status (Doc. 10, p. 2). One day later, Plaintiff was interviewed by internal affairs regarding a "scribe" (i.e., a letter or written note) found in his cell (*Id.*). Thereafter, Plaintiff was issued a disciplinary report charging him with 111 Security Threat Group or Unauthorized Organizational Leadership Activity (*Id.*). A disciplinary hearing was held on September 22, 2021, at which time Plaintiff pled guilty to the charge (*Id.*). Consequently, Plaintiff was found guilty and received three months of C grade, three months of segregation, and six months of audio/visual contact restrictions (*Id.*).[2]

Plaintiff alleged that just one day later, on September 23, 2021, he received an additional disciplinary report written by Defendant McCarthy from Internal Affairs (*Id.*). That report charged Plaintiff with 111 Security Threat Group or Unauthorized Organizational Leadership Activity based upon two letters that were discovered and attributed to Plaintiff following a handwriting analysis (*Id.*). But how those letters were discovered and their contents were not disclosed due to security concerns (*Id.*). Likewise, Plaintiff was not interviewed by Defendant McCarthy or anyone else within Internal Affairs (*Id.*).

A hearing on the second disciplinary report was held before the prison Adjustment Committee on September 28, 2021 (*Id.*). Defendants Schoenbeck and Jackson served as Adjustment Committee members (*Id.*). Plaintiff did not call any witnesses at the

---

[2] The Court mentions Plaintiff's prior disciplinary charge to provide additional context. However, this charge and its associated discipline are not at issue in this case.

hearing, but he did offer a written statement, testified on his own behalf, and pled not guilty (*Id.* at pp. 2-3). Plaintiff also requested to see the letters during the hearing, but the Adjustment Committee denied his request (*Id.* at p. 2). Ultimately, the Adjustment Committee found Plaintiff guilty of committing the disciplinary infractions as charged, and Plaintiff received three months C grade, six months segregation, and six months of audio/visual contact restrictions (*Id.* at p. 3).[3]

Pertinently, the Adjustment Committee's final summary report contained some discussion of the letters in question,[4] including the following:

> Based on the observation of the reporting employee, upon the conclusion of an Internal Investigation. The Investigation was initiated after two handwritten letters were discovered (exact date and location of the discovered letters being withheld for the safety and security of the institution). The author opens the letter with "Greetings! As always love & respect". The first letter contained the following statements "For the time being, any word to which comes from A.D. is to first be sent and go through the proper chain. Make sure that the COC of that cellhouse is aware of the following as well. Also when getting up with that cell house COC, in regards to the CHJ, how and who appointed him the CHJ position?" "For the time being all that is on hold until instructed on how to proceed. Don't misinterpret that as to Bro's ducking [things]. If a bro is happen to be put in a positions as such, he still takes care of his business." The author uses "COC" to refer to Chain of Command and "CHJ" to refer to the Cell House Jefe, a cell house leadership position within the Latin King STG. In the second letter the author opens with "Greetings bro, as always love and respect. In regards to the situation with the GD's, as of now all of that is on hold. For the time being just make sure that the COC and all the carnates are on the same page.["] The intended recipient of the letters has been identified but name and number being withheld for the safety and security of the institution. The author is discussing recent tensions between the Latin Kings and Gangster Disciples.

---

[3] Defendants' Statement of Undisputed Material Facts touched slightly on the conditions of Plaintiff's time in segregation (*see* Doc. 52, p. 6), and Plaintiff did not respond to Defendants' Motion to contest Defendants' facts or otherwise offer his own version of events regarding his stay in segregation.
[4] Additionally, the Disciplinary Report dated September 23, 2021, included a similar recollection of the two letters and explained that they were being withheld for safety and security reasons (Doc. 52-4).

(Doc. 52-5 at p. 1). Thereafter, the Final Summary Report found and emphasized that: (1) handwriting analysis was conducted and discovered multiple similarities between Plaintiff's handwriting and the author of the letters' handwriting; (2) Plaintiff has a history that includes multiple citations for the same charge on 9/17/21; (3) the findings were verified by an Internal Affairs investigation; and (4) the disciplinary report contained a factual and accurate account of the incident (*Id.*). The Chief Administrative Officer (i.e., the warden) approved the Adjustment Committee's determination on October 1, 2021 (*Id.* at p. 2).

On October 7, 2021, Plaintiff filed a grievance while in segregation that appealed the Adjustment Committee's decision, asserted that he had not been interviewed by Defendant McCarthy, questioned the handwriting analysis used to attribute the letters to him, and challenged the refusal to let him review the letters in question (Doc. 52-6). After that grievance was presumably fully exhausted,[5] Plaintiff filed this action on May 3, 2022 (Doc. 1).

Following a threshold review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claim:

> **Count 1**: Fourteenth Amendment violation of due process claim against McCarthy, Schoenbeck, and Jackson for failing to investigate and provide support for the report against Macias.

(Doc. 10 at pp. 4-5). Finally, on June 13, 2024, Defendants filed the instant Motion for Summary Judgment (Doc. 51) and supporting memorandum (Doc. 52). Notably, Plaintiff

---

[5] Defendants successfully withdrew the affirmative defense of failure to exhaust administrative remedies in June 2023 (*see* Docs. 40, 41).

Page **4** of **12**

did not file a response in opposition to Defendants' motion, despite being warned of the consequences for failing to do so by Defendants (*See* Doc. 53). *See Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982); *see also* SDIL-LR 56.1(j).

DISCUSSION

I. <u>Summary Judgment Standard</u>

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

In this case, Plaintiff failed to respond to Defendants' summary judgment motion as mandated by Southern District of Illinois Local Rule 56.1(g).[6] Pursuant to Local Rule

---

[6] In fact, as best the Court can tell, the last time Plaintiff participated in this litigation in any way was a video appearance for a mediation session on October 19, 2023 (*See* Doc. 45). This would seem to indicate

56.1(g), "[a]ll material facts set forth in a Statement of Material Facts or a Statement of Additional Material Facts shall be deemed admitted for purposes of summary judgment unless specifically disputed." Accordingly, because Plaintiff has failed to respond, "we depart from our usual deference towards the non-moving party, [Plaintiff], and accept all of [Defendants'] unopposed material facts as true." *Apex Digital*, *Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). Nevertheless, the Court is cognizant that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (internal quotation marks and citations omitted).

II.     Analysis of Defendants' Motion (Docs. 51, 52)

Defendants argue they are entitled to summary judgment for several reasons (*see generally* Doc. 52). First, Defendant McCarthy contends that he is entitled to summary judgment because he lacks personal involvement in the alleged constitutional violation (*Id.* at p. 8). Second, Defendants argue they are entitled to summary judgment because no liberty interest was created by Plaintiff's placement in segregation, necessarily defeating his due process claim (*Id.* at pp. 9-13). Third, Defendants argue they are entitled to summary judgment because Plaintiff received all necessary due process protections (*Id.* at pp. 13-17). And fourth, Defendants argue they should be granted summary judgment

---

that Plaintiff has abandoned any interest in pursuing this case. Nevertheless, the Court will still analyze the sufficiency of the summary judgment motion.

because they are entitled to qualified immunity (*Id.* at pp. 17-19). Because Plaintiff failed to respond to Defendants' motion for summary judgment and their undisputed facts indicate that Plaintiff received all the process he was due, the Court will focus its analysis on Defendants' third point as it is dispositive.

The Due Process Clause of the Fourteenth Amendment prohibits the deprivation "of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. To succeed on a due process claim, an inmate must establish two things. First, the inmate must show that he was deprived of a protected interest in life, liberty, or property. *Prude v. Meli*, 76 F.4th 648, 656 (7th Cir. 2023) (citing *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007)). Second, the inmate must show that "the procedures he was afforded upon that deprivation were constitutionally deficient." *Prude*, 76 F.4th at 656 (quoting *Scruggs*, 485 F.3d at 939). In other words, the question is "whether a protected liberty interest exists, and if so, whether [the prisoner] received adequate process to protect it." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024).

In considering whether a protected liberty interest exists, the uncontested material facts indicate that Plaintiff received six months in segregation for the disciplinary ticket at issue in this case.[7] In *Ealy*, the Seventh Circuit recently reiterated its holding that "fewer than six months in segregation . . . may still establish a liberty interest 'depending on the conditions of confinement.'" *Ealy*, 109 F.4th at 964-65 (quoting *Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015)). Here, however, just as in *Ealy*, the Court need not consider

---

[7] Plaintiff was actually sentenced to a total of nine months in restrictive housing, three months of that sentence came from a disciplinary ticket not at issue in this case (Doc. 52, p. 5).

whether a protected liberty interest is at stake, because even assuming that one is, Defendants' uncontested and undisputed facts establish that Plaintiff was afforded all the process he was due. *See Ealy*, 109 F.4th at 965.

Since Plaintiff's discipline only involved being sent to segregation and did not affect the length of his carceral sentence, he was only entitled to "informal, non-adversarial due process." *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024) (quoting *Westefer v. Neal*, 682 F.3d 679, 684-85). *See also Ealy,* 109 F. 4th at 965 (explaining that *Adams* "crystalized the process owed to inmates facing only disciplinary action like segregation, rather than disciplinary action affecting the length of their carceral sentence, like a reduction in good-time credit."). "Informal, non-adversarial due process" requires that Plaintiff be provided with notice of the reasons for his placement in segregation and an opportunity to present his views, for instance, in a written statement or at a hearing. *See Ealy,* 109 F.4th at 966; *Adams*, 91 F.4th at 895.

Here, Defendants' uncontested and undisputed facts demonstrate that Plaintiff was served with a disciplinary report, and thus received advanced written notice of the charges against him five days before the scheduled disciplinary hearing (Doc. 52-4; *see also* Doc. 52-1, p. 6). The disciplinary report specified the charges against him and recounted the contents of the letters that the charges were based on (*see* Doc. 52-4). Plaintiff was afforded a hearing before an impartial decisionmaker and given the opportunity to call witnesses and present evidence at the hearing, which he declined (Doc. 52-1 at pp. 1, 6-7). Plaintiff prepared and submitted a written statement at his hearing, and additionally tried "to give them [his] side verbally real quick when [he] was

in the room." (Doc. 52 at p. 4; Doc. 52-1 at pp. 6-7). After the hearing, Plaintiff was provided with a final report that explained the basis for the Committee's decision and the evidence relied upon in reaching that decision (Doc. 52-5; Doc. 52-1 at p. 7). Thus, the uncontested facts before the Court demonstrate that Plaintiff received all of the procedural safeguards that informal due process requires plus more. *See Adams*, 91 F.4th at 895 ("And the Supreme Court has made clear that '[o]rdinarily a written statement by the inmate will accomplish this purpose . . . . So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.'") (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)). To the extent that Plaintiff took issue with the Adjustment Committee's refusal to allow him to see the letters he was charged with authoring, he has not presented any evidence or developed any argument that the refusal violated his due process rights. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (a party opposing summary judgment waives claims to which it fails to respond or develop on summary judgment); *see also Ealy*, 109 F.4th at 966 (rejecting inmate's argument that adjustment committee's refusal to let him view surveillance footage violated his due process rights when inmate failed to establish that the footage was exculpatory, and inmate was also provided with a written description of the video's contents).

In sum, Defendants' material facts, which were uncontested and unrebutted by Plaintiff, establish there is no genuine issue of material fact as to whether Plaintiff received all of the process to which he was entitled, and summary judgment is thus appropriate for Defendants.

## CONCLUSION

For the reasons outlined above, Defendants' Motion for Summary Judgment is GRANTED (Doc. 51). Defendants Schoenbeck, Jackson, McCarthy, and Hughes are **DISMISSED with prejudice**. Additionally, because all other Defendants named in Plaintiff's Complaint have already been dismissed (*see* Doc. 10), this case is likewise **DISMISSED with prejudice.**

The Clerk of Court is directed to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED:  March 31, 2025**

                                                   s/ Mark A. Beatty
                                                   **MARK A. BEATTY**
                                                   **United States Magistrate Judge**

## NOTICE

Plaintiff is advised that this is a final decision ending his case in this Court. If Plaintiff wishes to contest this decision, he has two options: he can ask the undersigned to reconsider the Order or he can appeal to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal in the district court *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard). The current cost of filing an appeal with the Seventh Circuit is $600.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).

On the other hand, if Plaintiff wants to start with the undersigned, he can file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), but such a motion is not required to preserve his appellate rights. Any Rule 59(e) motion *must* be filed within twenty-eight (28) days of the entry of judgment. FED. R. CIV. P. 59(e), and the deadline *cannot* be extended. *See* FED. R. CIV. P. 6(b)(2). Any motion must also comply

with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) ("This court has held that otherwise timely skeletal motions that fail to satisfy the requirements of FED. R. CIV. P. 7(b)(1) do not postpone the 30–day period for filing a notice of appeal . . . .").

So long as the Rule 59(e) motion is in proper form and filed no later than 28 days after the judgment is entered, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the motion is ruled on. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal, and the clock will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760-61 (7th Cir. 2001); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.